605 So.2d 138 (1992)
Martha E. RYLAND, Appellant/Cross Appellee,
v.
Peter M. RYLAND, Appellee/Cross Appellant.
Nos. 91-0892, 91-0922.
District Court of Appeal of Florida, Fourth District.
September 2, 1992.
Rehearing and/or Clarification Denied October 14, 1992.
Michelle Kohn Harllee of Donald J. Sasser, P.A., West Palm Beach, for appellant/cross appellee.
*139 Lewis Kapner of Lewis Kapner, P.A., West Palm Beach, for appellee/cross appellant.
GUNTHER, Judge.
The appellant/cross appellee, Martha E. Ryland (wife), and the appellee/cross appellant, Peter M. Ryland (husband), appeal the trial court's final judgment of dissolution of marriage. At issue in this appeal are the trial court's rulings concerning permanent periodic alimony, lump sum alimony, child support, the residency of the child, health insurance for the child, equitable distribution of the marital home, prenuptial agreements, a "house resale contract," counseling for the child, attorney's fees, and costs. As set forth below, we affirm in part and reverse in part.
The parties entered into a patently "homemade" prenuptial agreement, married in 1985, and now have one son. During the marriage, a house was purchased in joint names with each party paying $10,000.00 toward the down payment. Before purchasing the house, it is undisputed that the husband refused to contribute to the purchase of the marital home unless the wife entered into a house resale contract. The wife signed the contract which provided, in pertinent part, that
[i]n the event of cessation of cohabitation between [the husband and wife], one half of the net marketable value of the home owned in joint ... shall be offered to [the husband] first. Upon agreement to the net marketable value of the home, which shall be determined by a mutually agreeable real estate appraiser at the time of cessation of cohabitation, [the husband], if he agrees to purchase [the wife's] one half ownership shall do so at this time. The settlement is to be in cash and the maximum time limit is 60 days after appraisal.
The parties later separated, and the petition for dissolution of marriage was filed.
We agree with the husband's contention that the trial court erred in declaring the house resale contract unenforceable for lack of consideration. As a general rule,
"The court will not ordinarily inquire into the adequacy of the consideration. And the court will not interfere with the facility of contracting and the free exercise of the will and judgment of the parties by not allowing them to be sole judges of the benefits to be derived from their bargains, provided there is no incompetency to contract, and the agreement violates no rule of law. As the law will not stop to scrutinize the amount of benefits conferred upon one party, so neither will it scan the extent of trouble, loss, or obligation the other party has subjected himself to.
... .
"Mere inadequacy of consideration is not a sufficient cause for rescinding or canceling a contract unless the inadequacy is so gross as to afford proof of actual fraud or unless the inadequacy is accompanied by other circumstances, such as weakness of mind or the like.
"Consideration may consist of either a benefit to the promisor or a detriment to the promisee... . It is, however, sufficient if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do. A contract may be supported by any detriment or inconvenience, however small, sustained by one party, if it is by the express or implied consent of the other party."
Bayshore Royal Co. v. Doran Jason Co., 480 So.2d 651, 656 (Fla. 2d DCA 1985) (quoting 11 Fla.Jur.2d Contracts § 63, at 355-57 (1979)). Because the husband, in the instant case, would not purchase the house unless the wife agreed to the terms of the house resale contract, we conclude there was consideration, and, thus, the trial court erred in not enforcing the contract.
Since the house resale contract is enforceable and the husband has the option to purchase the wife's one-half ownership interest in the marital home, we reverse that portion of the final judgment that awards joint ownership to the parties and that directs joint exclusive use and possession of the marital home on a six month rotating basis between the parties until the minor *140 child is eighteen years of age, marries, dies, or is otherwise emancipated. Moreover, because the trial court's ruling concerning the primary residence of the minor son becomes impossible to achieve as a result of our holding, we reverse that portion of the final judgment that requires the minor son to remain in the marital home with the parents moving in and out every six months.
In his cross appeal, the husband raises another issue with which we partially agree. The trial court, in awarding the wife $50,000.00 in lump sum alimony, held that it was "equitable and just that the court award the Wife as lump sum alimony 50% of [the] increase in net worth experienced by the Husband during this marriage, since the increase in net worth came about in large part because of the efforts and economic assistance of the Wife." The husband argues that since the trial court upheld the prenuptial agreement, and the agreement contains a provision protecting the husband's assets acquired separately during the marriage, the court erred in awarding attorney's fees and $50,000.00 in lump sum alimony from the husband's assets acquired separately during the marriage.
Although the parties' prenuptial agreement states that "assets acquired separately during the marriage shall remain the sole property of the acquiring partner," it fails to mention or waive alimony, lump sum alimony, or attorney's fees. In Cladis v. Cladis, 512 So.2d 271 (Fla. 4th DCA 1987), this court reasoned that because the prenuptial agreement did not mention lump sum alimony or attorney's fees, the wife was free to raise those claims, even though she had waived her right in the prenuptial agreement to her husband's property. Id. at 274-75. The Cladis court stated:
The proper application of lump sum alimony for different purposes under differing circumstances is the subject of much case law. One of the applications of lump sum alimony is to supply a means to effectuate equitable distribution of property. It is our view that while the wife here may be awarded lump sum alimony in the discretion of the trial court, she may not be awarded lump sum alimony in order to accomplish equitable distribution of the husband's property because to do so would be violative of the terms and spirit of the antenuptial agreement.
Id. at 275 (citation omitted). Thus, in light of Cladis, we conclude that the parties' prenuptial agreement does not preclude the wife from making a claim for lump sum alimony or attorney's fees, but it does preclude a claim against the husband's assets acquired separately during the marriage. Id.; see Porter v. Porter, 593 So.2d 1120, 1121 (Fla. 4th DCA 1992). Therefore, the trial court in the instant case did not err in awarding lump sum alimony and attorney's fees to the wife because such awards are not expressly waived by the valid prenuptial agreement. But, to the extent that the trial court attempted to distribute equitably the husband's separately acquired property, the trial court did err in awarding the wife $50,000.00 in lump sum alimony from the husband's separately acquired property. Upon remand, the trial court, at its discretion may again award lump sum alimony, so long as it is not specially awarded from the husband's separately acquired property. Furthermore, because of our reversal of the award of lump sum alimony, the trial court, at its discretion, may reconsider the denial of permanent periodic alimony.
However, because no attempt was made to award the attorney's fees specifically from the husband's assets acquired separately during the marriage, the trial court did not err in awarding the wife her fees. Yet, the trial court erred in setting the amount of the fee award. At the hearing, the trial court instructed the parties that it would only determine entitlement to fees in its final judgment and not the amount of the award, because the wife had informed the trial court that the affidavit of fees she had submitted at the hearing was possibly in error. The trial court, though, awarded fees based on the submitted affidavit. Therefore, upon remand, the trial court can award attorney's fees and lump sum alimony to the wife so long as the awards are not made specifically from *141 the husband's assets acquired separately during the marriage.
In conclusion, the trial court erred and we reverse its rulings, which declared the house resale contract unenforceable for lack of consideration, awarded the parties joint exclusive use and possession of the marital home on a six month rotating basis, awarded the wife $50,000.00 in lump sum alimony as equitable distribution of the husband's assets acquired separately during the marriage, and established the amount of the award of attorney's fees. We affirm, however, the trial court's ruling upholding the validity of the prenuptial agreement. Upon remand, because the prenuptial agreement fails to waive the right to alimony, lump sum alimony, and attorney's fees, the trial court, at its discretion, may make such awards as it deems appropriate. In addition, because the rulings concerning primary residential child custody, child support, health insurance, and counseling for the child are so intertwined with the financial ramifications of the disposition of the marital home, the lump sum alimony award, and the attorney's fee award, we reverse those rulings and remand them to the trial court for further consideration.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
DELL, J., and ALDERMAN, JAMES E., Senior Justice, concur.